UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AURELIAS MARSHALL,

       Petitioner,

v.

THOMAS WINN,

       Respondent.

Case No. 20-13178
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS [2]**

---

Aurelias Marshall was convicted of first-degree felony murder following a jury trial in Kent County Circuit Court. He is serving a life sentence at the Saginaw Correctional Facility in Freeland, Michigan. His conviction was affirmed on direct appeal and remained in-tact after post-conviction proceedings. He has now filed a *pro se* petition in federal court for a writ of habeas corpus under 28 U.S.C. § 2254. Marshall's petition raises various more than a dozen claims challenging his conviction.

For the reasons that follow, the Court finds that the state courts reasonably concluded that Marshall's claims were without merit or procedurally defaulted. Accordingly, the Court DENIES Marshall's petition.

## I. Factual and Procedural Background

State court factual findings are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *see also Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Thus,

this Court recites verbatim the relevant facts relied on by the Michigan Court of

Appeals on Marshall's direct appeal:

> This appeal arises out of the conviction of defendant for the murder of
> Joel Battaglia in front of 1065 Lake Drive in Grand Rapids, Michigan,
> in the early morning hours of June 11, 1990. Battaglia was last seen by
> friends at a bar in Grand Rapids. Following the discovery of his body,
> the Grand Rapids police began an investigation, however, despite the
> fact that defendant's brother Acey Marshall told detectives that
> defendant hit Battaglia on the day of his death, no charges were filed
> against defendant.
>
> The investigation of Battaglia's death was reopened in 2014, and
> investigative subpoenas were used in the investigation to Acey and
> Sheila Reed, who lived in the downstairs apartment at 1060 Lake Drive
> in 1990. Both testified pursuant to investigative subpoenas. Then, after
> they were charged with perjury, Acey and Sheila gave statements that
> placed defendant on Lake Drive when Battaglia was killed. Additional
> evidence was obtained from other individuals who testified that
> defendant told them that he had robbed and beaten a "white boy" in
> Grand Rapids. Following deliberations, the jury convicted defendant of
> felony murder.

*People v. Marshall*, No. 329362, 2017 WL 1337498, at *1 (Mich. Ct. App. Apr.

11, 2017). The trial court sentenced Marshall to life imprisonment without the

possibility of parole. *Id.* The Michigan Court of Appeals affirmed the conviction, *id.*,

and the Michigan Supreme Court denied leave to appeal, *People v. Marshall*, 903

N.W.2d 578 (Mich. 2017).

Marshall eventually filed a federal petition for writ of habeas corpus, which

was held in abeyance so he could return to the state court to exhaust additional

claims, *Marshall v. Winn*, No. 18-01367 (W.D. Mich. Jan. 7, 2019) (unpublished order

available on that docket at ECF No. 5 and on this docket at ECF No. 4 (W.D. Mich.

docket sheet)). The state trial court denied Marshall's post-conviction motion for relief

from judgment (*see* ECF No. 15-16 (*People v. Marshall*, No. 15-00706 (Mich. 17th Cir. Ct., June 12, 2019))), and the Michigan appellate courts denied Marshall leave to appeal (*see* ECF Nos. 15-18, 15-19 (*People v. Marshall*, No. 351587 (Mich. Ct. App. Mar. 31, 2020), *appeal denied*, 949 N.W.2d 687 (Mich. 2020) (mem.))).

The Western District of Michigan subsequently granted Marshall's motions to reopen his habeas case, amend his petition, and transfer the case to this district, where he intended to file his original petition. (ECF No. 3 (*Marshall v. Winn*, No. 18-01367 (W.D. Mich. Dec. 20, 2020)).) Marshall seeks a writ of habeas corpus on thirteen grounds. (ECF No. 2.) In his own words and organized loosely by the actor on which he focuses, Marshall alleges he was deprived of due process of law because (*see id.* (cleaned up)):

> "There is insufficient evidence of malice and robbery . . . to sustain a conviction for first-degree felony murder" (*id.* at PageID.230 (ground I));
>
> The prosecution "present[ed] prejudicial evidence of other bad acts" (*id.* at PageID.233 (ground II)), "intimidat[ed] witnesses favorable to the [Petitioner] into changing their testimony in favor of the prosecution" (*id.* at PageID.241 (ground V)) and "by charging these witnesses with the life offense of perjury 24 years after decedent's death" (*id.* at PageID.243 (ground VI)), "improperly bolstered and vouched for the credibility of witnesses by suggesting to the jury that the prosecution and detectives were privy to special knowledge regarding the witnesses' truthfulness" (*id.* at PageID.245 (ground VII)), and "withheld exculpatory evidence" in violation of Marshall's "constitutional rights under *Brady*" (*id.* at PageID.250 (ground XI));
>
> The trial court "substantiall[y] depart[ed] [from the] standard deadlocked jury instructions" (*id.* at PageID.236 (ground III)), "abused [its] discretion . . . by failing to grant petitioner a new trial, or at least an evidentiary hearing, based upon newly discovered evidence, witness intimidation, and testimony known to by perjured by the prosecution" (*id.* at PageID.247 (ground VIII)) and "by allowing the prosecutor to be

spared the scrutiny of claims of prosecutorial misconduct" (*id.* at PageID.248 (ground IX));

Marshall "receiv[ed] ineffective assistance of counsel at trial" (*id.* at PageID.239 (ground IV)) and "receiv[ed] ineffective assistance of appellate counsel, where counsel failed to investigate evidence in his possession, raise issues of prosecutorial misconduct," or "present stronger issues that were apparently meritorious" (*id.* at PageID.249 (ground X)).

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs this case, "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *see generally* 28 U.S.C. § 2254. Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision is contrary to federal law where the "state court applies a

rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.* at 405.

A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams*, 529 U.S. at 407–08). The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Claims Not Considered on the Merits

### A. Procedurally Defaulted Claims

A state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275–78 (1971). A prisoner confined pursuant to a Michigan state court conviction must raise each habeas issue in both the Michigan Court of Appeals and the Michigan Supreme Court before seeking federal habeas corpus relief. *See Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). The exhaustion doctrine, in the context of habeas cases, turns on whether there are

5

available state court procedures for a habeas petitioner to exhaust his claims. *See Adams v. Holland*, 330 F.3d 398, 401 (6th Cir. 2003).

Additionally, "[w]hen a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted." *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012). It cannot be raised in federal court unless the petitioner can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F.3d 1193, 1195–96 (6th Cir. 1995) (per curiam); *see Wainwright v. Sykes*, 433 U.S. 72, 87–91 (1977).

A claim of actual innocence, though, will excuse this "cause and prejudice" requirement. *Id.* at 1196 n.3 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). The innocence exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent, meaning that a fundamental miscarriage of justice has occurred and must be remedied. *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible," a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324.

### 1. Procedurally Defaulted Ineffective Assistance of Counsel Claims

The government argues that several of Marshall's ineffective assistance of counsel claims are procedurally defaulted because he failed to fully exhaust these claims in the state courts and no longer has an available remedy to do so.  (ECF No. 14, PageID.5.) The Court agrees.

The Court begins with Marshall's claims that trial counsel suppressed a report by the court-appointed private investigator, failed to investigate or question potential witness Bill Bissa, and failed to investigate other witnesses. (ECF No. 2, PageID.239–240.) But Marshall never presented these claims to any state court, either on direct or post-conviction review (*see* ECF No.14, PageID.263–265). These three claims are therefore not exhausted.

Marshall also alleges that trial counsel was ineffective for failing to call alibi witnesses and character witnesses, and for failing to object to prosecutorial misconduct. (ECF No. 2, PageID.240.) He did not raise these claims on his appeal of right before the Michigan Court of Appeals (ECF No. 15-17, PageID.2123–2209.) Marshall raised these ineffective assistance of trial counsel claims only for the first time in his application for leave to appeal to the Michigan Supreme Court. (ECF No. 15-19, PageID.2431–2445.) Raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim for exhaustion purposes. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). So these claims have not been properly exhausted either. *See Skinner v. McLemore*, 425 F. App'x 491,

494 (6th Cir. 2011); *Farley v. Lafler*, 193 F. App'x 543, 549 (6th Cir. 2006). And Marshall never attempted to raise these claims again in his post-conviction motion.

In sum, Marshall has failed to properly exhaust these six ineffective assistance of counsel claims with the state courts. And because a criminal defendant in Michigan may only file one post-conviction motion for relief from judgment per Michigan Court Rule 6.502(G)(1), *see Gadomski v. Renico*, 258 F. App'x 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999), Marshall has no remaining state court remedies with which to exhaust these claims.

Marshall has also failed to establish cause to excuse his default. While ineffective assistance of appellate counsel might excuse Marshall's failure to raise his claims on direct appeal, it does not excuse Marshall's own failure to exhaust his claims in his post-conviction motion for relief from judgment. *See Gadomski*, 258 F. App'x at 784. Additionally, Marshall has not established actual innocence. He argues that the evidence at trial was insufficient to support his conviction, but this is not enough to invoke the actual innocence exception to the procedural default doctrine. *See Moody v. Parris*, No. 20-5299, 2022 U.S. App. LEXIS 24714, at *21 (6th Cir. Aug. 30, 2022) (citing *Bell v. Howes*, 703 F.3d 848, 854 (6th Cir. 2012)). Marshall's purported alibi witnesses do not establish actual innocence as Marshall has never provided any affidavits from these witnesses as to what their proposed testimony would have been and whether they would have been willing to testify on his behalf. *See, e.g.*, *Townsend v. Lafler*, 99 F. App'x 606, 610 (6th Cir. 2004).

Marshall also claims he has evidence that other persons were the actual perpetrators. But this evidence consists of a letter from his trial attorney, dated March 25, 2015, informing Marshall that two men named Jermaine Stewart and Mark Armstrong stated they witnessed five people, not including Marshall, beating a person they believed was the murder victim. (ECF No. 18-2, PageID.3024.) Marshall does not have any corroborating affidavits from Stewart or Armstrong. The statements by the two men to trial counsel or an investigator are hearsay, and thus "presumptively unreliable" for supporting an actual innocence claim. *Bell v. Howes*, 701 F. App'x 408, 412 (6th Cir. 2017). Any such statements are also "entitled to little weight because they are unsworn." *Id.*

Marshall further claims that Stewart and Armstrong passed polygraph examinations regarding their claim that they witnessed the assault on the victim and that Marshall was not involved. (ECF No. 2, PageID.251.) But polygraph results are not considered admissible or reliable evidence, and thus, they cannot be used to establish Marshall's actual innocence so as to excuse his default. *See Bolton v. Berghuis*, 164 F. App'x 543, 549–50 (6th Cir. 2006) (concluding that polygraph results could not be used to establish habeas petitioner's actual innocence so as to equitably toll statute of limitations because polygraph results are not admissible or reliable evidence); *see also Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007) (rejecting as non-cognizable habeas petitioner's freestanding actual innocence claim which was based in part on a "qualified" polygraph report).

9

In sum, Marshall has failed to show cause to excuse his defaulted ineffective assistance of counsel claims.Nor has he shown his actual innocence. Thus, the Court will not address the merits of these claims.

And, in any event, Marshall cannot establish prejudice either. *See Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). For the reasons stated in the government's response, Marshall failed to show that his claims have any merit.

Thus, the Court denies Marshall habeas relief on his defaulted ineffective assistance of counsel claims.

### 2.Procedurally Defaulted *Brady* Claim

Marshall next alleges that the prosecutor committed a *Brady* violation by withholding the following: custodial interrogation notes containing alibi information, the length of Quinton Howell's sentence for his involvement in the assault, and the fact that witnesses were paid for their testimony. (ECF No. 2, PageID.250.)

The government contends these *Brady* claims are also procedurally defaulted because Marshall never exhausted them with the state courts and no longer has an available state remedy to do so. (ECF No. 14, PageID.372.) It is only partly correct. In his motion for relief from judgment, Marshall did present his claim that the prosecutor withheld notes from his custodial interrogation, which contained alibi information. (ECF No. 15-15, PageID.1573.) He also presented a claim that witnesses had been paid for their testimony. (*Id.* at PageID.1574.) But he did not present a claim about Howell receiving a 40-to-100-year sentence for his involvement in the murder, so this claim is unexhausted.

10

Further, Marshall no longer has any available state court remedies with which to exhaust this claim, since Michigan Court Rule 6.502(G)(1) permits only one post-conviction motion for relief from judgment. *See Gadomski*, 258 F. App'x at 783. So, again, Marshall's claim is defaulted unless he can show cause to excuse his failure to present this claim in the state courts and actual prejudice, or can establish his actual innocence. *See Hannah*, 49 F.3d at 1195–96. For the reasons stated above, however, Marshall can establish neither cause nor actual innocence. Therefore, Marshall's *Brady* claim involving Howell's sentence is procedurally barred. The Court will address below the merits of Marshall's non-defaulted *Brady* claims.

## B. Challenges to State Court Proceedings

Marshall's petition raises several errors in the application of state law. These are usually not questioned by a federal habeas court. *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). If the alleged error, however, is so "fundamentally unfair as to deprive the petitioner of due process," it is cognizable on habeas review. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004). With these underlying principles in mind, the Court addresses Marshall's state law challenges.

## 1. Admission of Prior Bad Acts Evidence

Marshall contends that he was denied a fair trial by the admission of various prior bad acts evidence in violation of Michigan Rule of Evidence § 404(b).

11

This claim is non-cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Estelle*, 502 U.S. at 72 (concluding that Supreme Court's habeas powers did not permit the Court to reverse a state court conviction based on the Court's belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. United States*, 493 U.S. 342, 352–53 (1990) (holding that due process was not violated by admission at defendant's bank robbery trial of "similar acts" evidence that defendant had been involved in, though acquitted of, a house burglary and explaining that state rules of evidence, including judge's discretion to exclude potentially prejudicial evidence, sufficiently protected "fundamental conceptions of justice").

Additionally, this claim was addressed and rejected by the Michigan court of appeals, and because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence, the admission of this evidence against Marshall at his state trial does not entitle him to habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Accordingly, Marshall is not entitled to relief on this claim.

### 2. Denial of Claims on Post-Conviction Review

Marshall alleges that the trial judge erred in failing to conduct an evidentiary hearing on the claims that Marshall raised in his post-conviction motion for relief from judgment. (ECF No. 2, PageID.247.) He also says that the trial judge erred in

denying his prosecutorial misconduct claims on state post-conviction review. (*Id.* at PageID.248.)

These claims fail because "the Sixth Circuit consistently [has] held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress*, 484 F.3d at 853. States have no constitutional obligation to provide post-conviction remedies, so a federal habeas corpus petition cannot be used to challenge the adequacy of post-conviction remedies a state does choose to provide. *See Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)).

Furthermore, challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because [the court] would not be reviewing any matter directly pertaining to his detention.'" *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). Thus, the "scope of the writ" does not encompass a "second tier of complaints about deficiencies in state post-conviction proceedings." *Id.* at 853 (quoting *Kirby*, 794 F.2d at 248). "[T]he writ is not the proper means to challenge collateral matters as opposed to the

underlying state conviction giving rise to the prisoner's incarceration." *Id.* (internal quotation marks omitted).

Thus, Marshall's challenges to the alleged procedural deficiencies in his state post-conviction proceedings do not entitle him to habeas relief.

### IV. Claims Considered on the Merits

### A. Sufficiency of the Evidence

The Court now turns to the claims that have not been procedurally defaulted.

First, Marshall claims that there was insufficient evidence to support his conviction of first degree felony murder. This claim was considered and rejected by the Michigan Court of Appeals. *People v. Marshall*, No. 329362, 2017 WL 1337498, at *1 (Mich. Ct. App. Apr. 11, 2017). Thus, it is entitled to AEDPA deference.

The critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted). "Circumstantial evidence may support a conviction, and such evidence need not remove every reasonable hypothesis except that of guilt." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006) (internal citations omitted).

Under AEDPA, the Court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). First, "it is the responsibility of the [fact finder] to decide what conclusions should be drawn from evidence admitted at trial." *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Id.* (internal quotation marks omitted) (quoting *Cavazos*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

Under Michigan law, the elements of first-degree felony murder are: (1) the killing of a human being; (2) with an intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., with malice); (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute. *Matthews*, 319 F. 3d at 789 (citing *People v. Carines*, 597 N.W.2d 130 (Mich. 1999)); *see* Mich. Comp. Laws § 750.316(1)(b). The underlying felony in this case was unarmed robbery. The elements of unarmed robbery are: "(1) The felonious taking of property from another; (2) by force, violence, assault, or putting in fear; (3)

while being unarmed." *People v. Johnson*, 520 N.W.2d 672, 674 (Mich. Ct. App. 1994); *see* Mich. Comp. Laws § 750.530. The second element of the unarmed robbery statute is disjunctive, meaning that a defendant may accomplish the taking of another's property either by force and violence, or by assault, or by putting another in fear. *People v. Berry*, 315 N.W.2d 199, 201 (Mich. Ct. App. 1981).

### 1. Malice Aforethought

Marshall first argues that there was insufficient evidence to establish that he acted with malice aforethought—the second element of felony murder.

On Marshall's direct appeal, the Michigan Court of Appeals disagreed. *Marshall*, 2017 WL 1337498, at *2. It found that the evidence established that Marshall and another person attacked and assaulted the victim: Marshall told several witnesses that he beat and robbed the victim; Marshall appeared, covered in blood, at one witness' house on the night of the murder; and the medical examiner testified that "[the victim] was hit at least five times in the face and at least one time in the back of the head. The blow to the back of [the victim's] head caused a depressed skull fracture," and that "the force necessary to create the fracture was that of a full-grown person swinging a baseball bat, or a similar item, very hard." *Id.* There is no reason not to give this finding deference.

Malice may be inferred from the circumstances of the killing, including the brutality of the beating inflicted upon the victim. *See People v. Harris*, 476 N.W.2d 767, 770–71 (Mich. Ct. App. 1991); *People v. Thomas*, 272 N.W.2d 157, 160 (Mich. Ct. App. 1978) ("In the instant case defendant's savage and brutal beating of the decedent

is amply sufficient to establish malice."). Indeed, the jury could have reasonably inferred that Marshall acted with malice from the degree of force needed to cause the victim's injuries. *See People v. Lange*, 650 N.W.2d 691 (Mich. Ct. App. 2002).

## 2. Committed During Felony

Marshall next contends that there was insufficient evidence to establish that the victim was killed during the commission of a felony (in this case a robbery)—the third element of felony murder. Marshall points to the fact that police found money on the victim, suggesting the victim was not robbed.

The Michigan Court of Appeals rejected this argument too, noting that, while the victim's roommate testified that the victim carried a wallet with him, the police did not recover a wallet from the scene, nor was one found in the victim's clothing at the autopsy. *Marshall*, 2017 WL 1337498, at *3. The medical examiner also testified that the victim had a "pale band" above his left wrist, suggesting that the victim wore a watch or a similar item there, but a watch was not included in the possessions that the police recovered. *Id.* And two witnesses testified that Marshall admitted to robbing the victim. *Id.* The Michigan Court of Appeals reasonably determined that this was sufficient circumstantial evidence to establish that the victim was killed during a robbery, *id.*, precluding relief.

## 3. Intent to Commit a Felony

Marshall next claims that there was insufficient evidence presented on intent.

The felony murder doctrine in Michigan requires that a defendant intended to commit the underlying felony at the time the homicide was committed. *People v.*

17

*Brannon*, 486 N.W.2d 83, 85–86 (Mich. Ct. App. 1992). In other words, it is not felony murder if the intent to commit the underlying crime is not formed until after the homicide is committed. *Id.* at 86. However, "[i]t is not necessary that the murder be contemporaneous with the enumerated felony." *Id.* at 85. Evidence that a defendant committed a robbery immediately after the assault is sufficient evidence from which a jury could infer that the defendant possessed an intent to commit the robbery at the time of the homicide. *See People v. Vaughn*, 340 N.W.2d 310, 312 (Mich. Ct. App. 1983).

The Michigan Court of Appeals addressed and rejected Marshall's claim as to intent, noting that there was evidence that Marshall "used and was addicted to crack cocaine in 1990," and one witness "testified that robberies were not uncommon for drug addicts." *Marshall*, 2017 WL 1337498, at *3. This witness also testified that Marshall said that he and his brother decided to rob the victim when they discovered that the victim had money. *Id.* From this evidence, a jury could infer that Marshall intended to commit the robbery at the time that the homicide occurred.

### B. Unduly Coercive Deadlocked Jury Instruction

Marshall next claims that habeas relief is warranted because the judge gave an unduly coercive "deadlocked jury" instruction when he told the jurors that if they could not reach a verdict, the case would be tried before another jury. (ECF No. 2, PageID.236–237.) Marshall also claims that the judge coerced a verdict by making

the foreperson stand up in court and criticizing him for not exerting enough control over the dissenting jurors so as to reach a verdict.[1] (*Id.* at PageID.237.)

The jury deliberated for a little over two hours on the first day of trial. (ECF No. 15-12, PageID.1537.) The jurors were sent home for the weekend and returned the following Monday to resume their deliberations. (ECF No. 15-13, PageID.1542.) At around 3:00 p.m., the jury indicated they were "hung up." (*Id.* at PageID.1543.) The judge instructed the jury to continue deliberations:

> It is not uncommon for a jury to come and tell me, after they've been at it for a while that they feel they can't reach a unanimous verdict. I'm going to encourage you to go back into the jury room and to continue your discussions. You need to look at the crimes, look at the elements. State your reasons for your opinions and if you feel you're wrong, don't be afraid to change your mind. I've already given you some instructions on that. In reality, if you folks can't reach a decision and you are a hung jury ultimately, all we're going to do is retry this case. We're going to get 14 people, we're going to take another week and we're going to have all the same testimony and we're going to have another dozen people in there trying to make a decision on the same facts and circumstances. I'm going to encourage you to go in there and work together and explain your reasons and your justifications for them and continue on working, please.

(*Id.* at PageID.1543–44 (Jury Trial Tr.).)

---

[1] Respondent argues that this claim is defaulted because, at trial, defense counsel waived the issue by expressing satisfaction with the instruction as given. But Marshall alleges that trial counsel was ineffective for failing to object to the deadlocked jury instruction (ECF No. 2, PageID.240), and ineffective assistance of counsel may establish cause for procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the claim, it is easier for the Court to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

19

The jury again continued to deliberate. (*Id.* at PageID.1544.) Within ten minutes, the trial court received another note that read: "We have not taken this case lightly and we have given this considerable time and effort. We do not want to rehash this case." (*Id.* at PageID.1545.) The judge brought the jury back in and addressed the foreperson:

> Would the foreperson please rise, whoever it is. Sir? Just stay there, just stay in your seat, sir. You're fine. I'm a little shocked at this response, to be honest with you. I've been doing this for 30 years, I've been on the bench for 9 years. I've had many jurors go three—many trials where jurors have been deliberation [sic] for two, three, four days. Are you telling me sir, absolutely that there's no way than you can have honest discussions about this case from this point forward?

(*Id.* at PageID.1545–1546.)

The foreperson told the judge that the jury "had honest discussions" but felt they had reached a point where they could "find no common ground to continue on."

(*Id.* at PageID.1546.) The judge then instructed:

> You may be seated, sir. I meant what I said last time. If you folks don't make a decision on this case, and if you don't, you don't. But if you can't, then another jury is going to have to hear the same facts and be forced to make some considerations. Now I'm asking you to go back in there and discuss this case. If your foreperson is not leading discussions in a proper way, maybe you need to elect another foreperson. I don't know. I'm not saying you have to [do] one thing or the other, but I'm asking you to [go] back in there and give it an honest try for at least another hour or so and see if you can make some headway. Every juror should be able to share in their discussions, talk about the issues, talk about— you should look at the elements of the crime. You have two crimes to consider. Follow the verdict form, and go back in there and discuss this matter for at least an additional hour, and then I'll bring you back out and we'll see where we go from there. All right. Thank you.

(*Id.*) A little over an hour later, the jury came back with a verdict of guilty. (*Id.* at PageID.1547–1548.)

20

When a jury is deadlocked, a trial court may give a supplemental instruction encouraging the jury to reach a verdict if possible. *See Allen v. United States*, 164 U.S. 492, 501–02 (1896). The constitutionality of an "*Allen*" or "dynamite" charge turns on whether the charge is coercive. *See Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988). In order to determine whether a jury was coerced, the Court "consider[s] the supplemental charge given by the trial court 'in its context and under all the circumstances.'" *Id.* at 237 (quoting *Jenkins v. United States*, 380 U.S. 445 (1965) (per curiam); *see also United States v. Aloi*, 9 F.3d 438, 443 (6th Cir. 1993) ("A charge that strays too far from the charge approved in *Allen* will rise to the level of a constitutional violation only if 'in its context and under all the circumstances, [the charge] . . . was coercive.'") (quoting *Williams v. Parke*, 741 F.2d 847, 850 (6th Cir. 1984)).

Here, the judge's supplemental instruction "did not pressure a decision in a particular direction." *United States v. Lash*, 937 F.2d 1077, 1086 (6th Cir. 1991). Nor did the instruction require the jurors to reach a verdict. Contrary to Marshall's assertion, it is not unduly coercive for a judge to tell a deadlocked jury that if they fail to reach a verdict another jury will be empaneled to hear the case. As the Sixth Circuit explained in denying a certificate of appealability on a very similar issue:

> Reasonable jurists could not disagree with the district court's conclusion that the supplemental charge to the jury in this case was not unduly coercive. The trial court did not instruct the jury that it was required to agree on a verdict and did not focus its instruction on the dissenting jurors. Instead, the trial court instructed the jury to act in a manner consistent with their honor and consciences and to be open-minded, while acknowledging that, in some cases, consensus is not possible. This instruction, while not expressly advising the jurors not to give up their

21

> "honest convictions," did remind them to proceed in a manner consistent
> with their consciences, honor, and judgment. Under these
> circumstances, the trial court's reference to the expense and
> inconvenience of declaring a mistrial did not render the charge unduly
> coercive.

*In re Thomas*, No. 10-2142 (6th Cir. May 25, 2011) (order) (citations omitted)*;
see* also *Williams*, 741 F.2d at 850 (finding that a jury charge that "alluded to the
possibility that a new jury might be necessary and also told the jury to return to court
if agreement could not be reached" was not unduly coercive because "the jurors' right
to continue disagreeing was implicit in the charge").

The trial judge's failure to remind jurors not to abandon their honest
convictions also did not render the deadlocked instruction unduly coercive. *See
Bedford v. Collins*, 567 F.3d 225, 238 (6th Cir. 2009) (finding a jury instruction that
"failed to caution [jurors] not to abandon their conscientiously held views" was not
unduly coercive because "[t]here is no iron-clad rule that a trial court's failure to
include that reminder, though unfortunate and ill-advised, is invariably fatal to the
conviction"). And, importantly, "a general instruction, addressed to all jurors, suffices
so long as it does not imply that only those in the minority should rethink their
position." *Id.* (citing *Williams*, 741 F.2d at 850–51). And even though the jury
returned a verdict just an hour later, "[t]he speed with which a jury may reach a
verdict following the giving of the charge cannot be considered" in determining
whether the charge was coercive. *United States v. Giacalone,* 588 F.2d 1158, 1168
(6th Cir. 1978).

Marshall also argues that the judge's action in chastising the foreperson was unduly coercive because the judge suggested that the foreperson should be replaced if he could not deliver a unanimous verdict. But, again, under the totality of the circumstances, this did not direct the jury to reach a particular verdict, abandon their honest opinions, or have anything to do with the substance of the deliberations. The judge suggested replacing the foreperson if it would facilitate more fruitful discussions, not because the foreperson disagreed with other members of the jury. And the judge did not remove the foreperson or instruct the jury to do so—the judge in fact made a point of saying "I'm not saying you have to [do] one thing or the other," and "[e]very juror should be able to share in their discussions, talk about the issues." (ECF No. 15-13, PageID.1546.)

Considering this statement "in its context and under all the circumstances," *Aloi*, 9 F.3d at 443, it was reasonable for the Michigan Court of Appeals to conclude that "[t]hough somewhat inexplicable as to their intent, the trial court's statements cannot be viewed as a chastisement that the foreperson failed to and should exert pressure on jurors who were in the minority." *Marshall*, 2017 WL 1337498, at *8. Thus, Marshall is not entitled to habeas relief on his claim. *See Early v. Packer*, 537 U.S. 3, 10–11 (2002).

### C. Witness Intimidation

Next, Marshall argues that his due process rights were violated because the police and prosecutor coerced Sheila Reed and his brother Acey Marshall into testifying against him by charging them with perjury after they testified at an

investigative subpoena hearing.[2] (ECF No. 2, PageID.243–244.) Marshall also alleges the police or prosecutor intimidated Brenda Thompson by threatening to charge her with perjury if she did not change her testimony from the investigative subpoena hearing and testify favorably for the prosecutor at the trial. (*Id.* at PageID.241.) Marshall further claims that the prosecutors paid several witnesses for their testimony. (*Id.* at PageID.248.)

Ordinarily, the Fifth Amendment right against compelled incrimination is a personal right and may not be asserted on another's behalf. *See United States v. Nobles*, 422 U.S. 225, 234 (1975). The Sixth Amendment right to counsel is also personal and cannot be asserted vicariously. *See Texas v. Cobb*, 532 U.S. 162, 172 n.2 (2001). Marshall, therefore, would lack standing to challenge the alleged violations of these witness's constitutional rights. But Marshall makes a slightly different argument. Indeed, the Sixth Circuit has held that use of another person's coerced testimony may violate a defendant's rights under the Due Process Clause of the Fourteenth Amendment. *See Bradford v. Johnson*, 354 F. Supp. 1331 (E.D. Mich. 1972) *aff'd by* 476 F.2d 66 (6th Cir. 1973). Marshall, nonetheless, is not entitled to habeas relief on his claim for several reasons.

---

[2] The Warden argues that these claims are procedurally defaulted because they were never raised before the Michigan courts. (ECF No. 14, PageID.341–342.) It is true that these claims were raised in appeal briefs that were ultimately stricken and thus never considered by the appellate courts on direct appeal. But Marshall did raise these claims, as well as his prosecutorial misconduct claims, in his post-conviction motion for relief from judgment. (*See* ECF No. 15-15, PageID.1574, 1576, 1579–1580, 1591–1595.) Therefore, these claims are not procedurally defaulted.

First, the Sixth Circuit's decision in *Bradford* does not clearly establish the law for purposes of this Court's habeas review. A habeas court may only look at the holdings of the United States Supreme Court to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *See Bergman v. Howard*, 54 F.4th 950, 957 (6th Cir. 2022) ("To qualify as 'clearly established,' a principle must originate from an actual Supreme Court holding, not from its passing dicta.")

Here, "[t]he Supreme Court has not decided whether the admission of a coerced third-party statement [against a criminal defendant] is unconstitutional." *Samuel v. Frank*, 525 F.3d 566, 569 (7th Cir. 2008) (concluding that sexual assault victim's out of court statements to the police were admissible even though the police told the victim she would not get her baby back if she did not cooperate). Moreover, "the concern with coerced statements is a concern with confessions or other self-incriminating statements, rather than the coercion itself." *Id.* A witness's coerced testimony is different from a defendant's coerced statement as "confessions tend to be devastating evidence in a jury trial because jurors find it difficult to imagine someone confessing to a crime if he is not guilty, unless the pressures exerted on him to confess were overwhelming." *Id.* The fact that the case for exclusion of a third party's coerced statement "is so much weaker . . . than in the case of a defendant's coerced confession is a further clue that exclusion would require the creation of new law rather than the application of an existing principle." *Id.*

Therefore, in the absence of a Supreme Court decision requiring the suppression of a nondefendant witness' coerced testimony, the federal law is not clearly established for purposes of this Court's review. In turn, a state court's allowance of such testimony can be neither contrary to nor an unreasonable application of clearly established federal law. *See, e.g.*, *id.* at 571 (explaining that, regardless of whether a state court is "right or wrong to refuse to extend the bar against the use of a defendant's coerced statement to that of a nondefendant witness," a state court would not be "unreasonable in refusing to do so"). As such, Marshall is not entitled to habeas relief on these claims.

Moreover, even where police conduct in obtaining a statement from a witness is inappropriate, a habeas petitioner's due process rights are not violated if the conduct is "not so extreme that it violates a sense of fundamental fairness, shocking to universal justice" and as long as the petitioner is able to cross-examine the witness regarding the circumstances surrounding the police interrogation. *Wilcox v. Ford*, 813 F.2d 1140, 1149 (11th Cir. 1987) (internal quotation marks omitted). The opportunity for cross examination allows the jury "adequate opportunity to assess the proper weight to be accorded to the challenged evidence." *Id*.

Here, Sheila Reed,[3] Acey Marshall, and Brenda Thompson were all cross-examined extensively by defense counsel. All three were cross-examined about their

---

[3] The trial transcript's table of contents indicates that the cross-examination of Reed could be found on pages 123–152 of the transcript. (ECF No. 15-7, PageID.856.) Pages 123–126 are missing from the transcript provided by the state. Nonetheless, a review of the existing pages of the cross-examination shows that counsel covered these issues extensively with Reed during cross-examination.

failures to go to the police to incriminate Marshall earlier and their prior inconsistent or false statements about the case to law enforcement. (ECF No. 15-7, PageID.887–891 (Sheila Reed); ECF No. 15-9, PageID.979–1001 (Acey Marshall), 1084–1092 (Brenda Thompson).) Acey Marshall was further cross-examined about his prior identification of other persons as the murder suspects (ECF No. 15-9, PageID.979–994) and about his perjury charge (*id.* at PageID.1000–1001). Reed was cross-examined about only incriminating Marshall after being charged with perjury for her initial testimony at the investigative subpoena hearing. (ECF No. 15-7, PageID.890–891.) And Thompson was cross-examined about her changed testimony at the investigative subpoena hearing after being threatened with a perjury charge. (ECF No. 15-9, PageID.1084–1092, 1095.) This cross-examination afforded the jury an adequate opportunity to determine whether the witnesses' testimony had been unduly coerced or not.

Finally, these three witnesses were not the only persons who testified against Marshall at trial. Clarassa Polite, the daughter of Marshall's ex-girlfriend Patricia Polite, testified that when she was a young girl, Marshall came to their house, knocked on the door, and was let in by her mother. Clarassa testified she saw Marshall was covered in blood, and the next morning, saw bloody clothes on the floor. (*Id.* at PageID.1015–1020.) Patricia Polite similarly testified that at some time in 1990 or 1991, Marshall appeared at her house and told her he beat up a white male after that man hurled a racial slur at him, and that Marshall's brother Acey later informed her that it was the murder victim whom Marshall had beaten up. (*Id.* at

27

PageID.1038–1039, 1043–1044, 1051–1056.) Guadalupe Harwood testified that he was Marshall's neighbor and saw the police arrest Marshall for perjury. (ECF No. 15-12, PageID.1428–1429.) After Marshall was released on bond, he asked Harwood to repair the ignition on a vehicle so that he could "get out of here." (*Id.* at PageID.1427.) When Harwood asked him why he felt the need to leave, Marshall replied that he and his brother Acey were involved in a murder. (*Id.* at PageID.1427–1428.) Marshall told him the murder took place in New Orleans but later admitted it took place in Grand Rapids and involved a robbery, but that there had been no intent to kill the victim. (*Id.* at PageID.1429–1432.)

In light of this additional testimony, Marshall is unable to show that the incriminating testimony of Reed, Thompson, or Acey Marshall was false or that the verdict would have been different had their testimony been excluded. Marshall is not entitled to relief on these claims.

### D. Prosecutorial Misconduct

Marshall claims that the prosecutor committed misconduct by vouching for the credibility of the witnesses. (ECF No. 2, PageID.245–246.)

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*,

416 U.S. 637, 643 (1974)). And prosecutorial misconduct can only form the basis for habeas relief if the conduct was so egregious that it rendered the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643–45. To obtain relief, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103); *see also Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017) (describing the standard for prosecutorial misconduct habeas claims as a "high bar").

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses. Such personal assurances of guilt or vouching for the veracity of witnesses "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *See United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility

29

and truthfulness of witnesses and their testimony." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted); *see also Griffin v. Berghuis*, 298 F. Supp. 2d 663, 674–75 (E.D. Mich. 2004). Habeas relief for improper vouching is rare, *see Byrd v. Collins*, 209 F.3d 486, 537 n.43 (6th Cir. 2000), and "the Supreme Court has never specifically held that a prosecutor's vouching for the credibility of a witness resulted in a denial of due process," *Wilson v. Bell*, 368 F. App'x 627, 632 n.3 (6th Cir. 2010). Even on direct appeal from a federal conviction, the Sixth Circuit has held that, to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief in a witness' credibility or in a defendant's guilt must be flagrant and not isolated. *See United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir. 2002).

The only specific examples of alleged vouching that Marshall points to were the prosecutor's remarks that each of the witnesses had a reason to tell the truth and that Clarassa Polite had not been charged with any crime. (ECF No. 18-1, PageID.2879.) But a prosecutor does not engage in impermissible vouching by arguing that witnesses testified truthfully when such arguments are based on the evidence in the record and not on the prosecutor's personal beliefs or external evidence not before the jury. *See United States v. Jackson*, 473 F.3d 660, 672 (6th Cir. 2007); *see also Cockream v. Jones*, 382 F. App'x 479, 484–85 (6th Cir. 2010). Here, the prosecutor did not argue or suggest that she had any special knowledge about the witnesses that had not been presented to the jury. There was no improper vouching because the prosecutor did not improperly "assert or imply that [she] drew from

anything but [the witnesses'] trial testimony to argue that [they were] credible." *Cockream*, 382 F. App'x at 485.

Additionally, the prosecutor's comments were brief and isolated. An isolated instance of vouching does not make a state trial so constitutionally infirm that federal habeas relief is justified. *See e.g.*, *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006). Also, the sizeable amount of evidence offered by the state against Marshall made it unlikely that the jury was misled by this brief statement. *See Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. 2001). Lastly, the jury was instructed that the lawyers' statements and arguments were not evidence. (ECF No. 15-12, PageID.1521.) This instruction by the court cured any prejudice that may have arisen from any improper vouching. *Byrd*, 209 F.3d at 537. Accordingly, Marshall is not entitled to relief on his prosecutorial misconduct claim.

### E. *Brady* Claims

Marshall next alleges that the prosecutor committed *Brady* violations by withholding certain evidence. [4] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that a defendant's due process rights are violated if he requests material, exculpatory evidence and the prosecution fails to provide him with it, irrespective of the good or bad faith of the prosecution); *United States v. Bagley*, 473 U.S. 667, 683

---

[4] Marshall makes a third *Brady* claim regarding the length of Quinton Howell's sentence for his involvement in the assault but, as discussed above, this claim is procedurally defaulted and Marshall has not shown cause to excuse the default. So the Court will not consider this claim on the merits.

(1985) (doing away with the requirement that the defendant must request such evidence).

In *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999), the Supreme Court articulated three essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued (i.e., the evidence at issue was material). "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002). Evidence is material only if there is a reasonable probability—"a probability sufficient to undermine confidence in the outcome"—that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 683.

Marshall first claims that the prosecutor failed to turn over custodial interrogation notes that contained alibi information. Marshall does not elaborate in his amended petition on what this information is, but in his reply he alleges that his ex-girlfriend told detectives Marshall lived with her in Louisville, Kentucky, from March 16, 1990, through July 11, 1990 (overlapping with the date of the underlying crime, which occurred on June 11, 1990). (ECF No. 17-1, PageID.2659; ECF No. 18-1, PageID.2939.) Marshall also claims that his mother told the police he was in Kentucky during this period. (*Id.*)

Marshall is not entitled to relief on this claim for several reasons.

First, Marshall did not provide the state courts and has not provided this Court with a copy of the police interrogation notes, nor has he provided affidavits from either his ex-girlfriend or his mother stating that they informed the police that Marshall had an alibi. (*See* ECF Nos. 15-15, 15-6.) A habeas petitioner bears the burden of showing the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012). Allegations that are merely conclusory or purely speculative cannot support a *Brady* claim. *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). "[M]ere speculation that a government file may contain *Brady* material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999). Marshall failed to show that the police interrogation notes were suppressed or that they contained information that would support an alibi defense.

Second, the requirements of *Brady* do not apply to "information that is not wholly within control of the prosecution." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *See id.* Marshall offers no explanation as to how he was unaware that his mother and ex-girlfriend were willing to provide him with an alibi defense. Marshall is not entitled to relief on this claim.

Marshall also claims that the police or prosecutor offered money to witnesses to testify against Marshall or to refrain from testifying as defense witnesses.

Marshall has attached to his briefing affidavits from several individuals concerning their dealings with law enforcement or the prosecutor in this case. (ECF No. 17-1, PageID.2745–2749, 2755–2756; ECF No. 17-2, PageID.2757–2758, 2760–2761, 2763–2764; ECF No. 18-2, PageID.2955–2999, 3007–3008, 3014–3015, 3017–3018.) It appears Marshall did not file these affidavits in state court, but even if he had, it would not have affected the outcome. These individuals, with one exception, do not indicate that they were offered money to testify against Marshall or to refrain from testifying as defense witnesses.

Only Veronica Henderson mentions anything about money in her affidavit, and she merely states that the police told her that she would have to go down to the courthouse and give a statement to the prosecuting attorney and would be paid for her time and parking. (ECF No. 17-1, PageID.2746.) Henderson says she went down to the courthouse and gave a statement to the prosecuting attorney, in which she refuted various allegations the prosecuting attorney made about Marshall. (*Id.* at PageID.2746–48). There is no allegation that Henderson was called to testify for the prosecution and the trial record is devoid of her testimony. Henderson further avers that "the Court told me that they were going to pay me for my time and for my parking and they didn't do that at all are [sic] court system sucks." (*Id.* at PageID.2748.) There is nothing to support that the prosecutor or police offered Henderson money to testify falsely against Marshall. Marshall is not entitled to relief on his *Brady* claims.

### F. Ineffective Assistance of Counsel

Next, the Court turns to Marshall's non-defaulted ineffective assistance of counsel claims. Marshall makes two sets of claims, some against trial counsel and some against appellate counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), sets forth the familiar test for claims of ineffective assistance of counsel: the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. To prevail on his ineffective assistance of counsel claims, Marshall must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, the standard articulated in *Strickland*. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### 1. Trial Counsel

Marshall alleges that trial counsel was ineffective for failing to object to the following admission of prior bad acts evidence at a pretrial hearing: that Marshall assaulted his ex-girlfriend's daughter (Clarassa Polite) with an extension cord, was charged with perjury after he testified pursuant to an investigative subpoena, and used crack cocaine. (*See* ECF No. 2, PageID.233–235, 239–240.) The Michigan Court of Appeals rejected this claim on the merits because defense counsel objected to the admission of this evidence at the hearing on the prosecutor's motion in limine to admit the evidence. *Marshall*, 2017 WL 1337498, at *6. Because counsel did, in fact, object to the admission of this evidence, Marshall's ineffective assistance of trial counsel claim is without merit. *See, e.g.*, *Durr v. Mitchell*, 487 F.3d 423, 440 (6th Cir. 2007).

35

Marshall also claims that counsel should have objected to Patricia Polite's testimony that Marshall assaulted the victim after he used a racial slur against Marshall and to Guadalupe Harwood's testimony that Marshall said he was involved in a murder in Grand Rapids arising out of a drug transaction. (ECF No. 2, PageID.239–240.) The Michigan Court of Appeals addressed this argument on the merits as well. It ruled that this testimony did not involve prior bad acts and thus would have been admissible under Michigan Rule of Evidence § 404(b). *Marshall*, 2017 WL 1337498, at *5. Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is constrained to reject this portion of Marshall's ineffective assistance of trial counsel claims. *Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005). The Michigan Court of Appeals' determination was not an unreasonable application of clearly established federal law, and thus, does not warrant federal habeas relief.

Marshall also alleges that trial counsel was ineffective for failing to object to the judge's deadlocked jury instructions as unduly coercive. But as the Court explained, the jury instruction was not unduly coercive and therefore counsel was not ineffective for failing to object to the instruction. *See United States v. Quintero-Barraza*, 78 F.3d 1344, 1350 (9th Cir. 1995) (finding that counsel was not ineffective

for failing to object to an *Allen* charge where there was no evidence that the charge was explicitly coercive); *see also Cain v. Rapelje*, No. 12-13637, 2020 WL 2733857, at *6 (E.D. Mich. May 26, 2020) (same). Marshall is not entitled to relief on his ineffective assistance of trial counsel claims.

## 2. Appellate Counsel

Marshall also says he was denied the effective assistance of appellate counsel. Marshall alleges that his appellate counsel was ineffective for failing to "investigate" a report compiled by a private investigator and for failing to highlight prosecutorial misconduct on direct appeal. (ECF No. 2, PageID.249.) Marshall further alleges that appellate counsel omitted "dead bang" winning claims and submitted weaker claims. (*Id.*) Marshall does not identify the "dead bang" winner claims, nor the weaker claims. (*See id.*)

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel on an appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). Nonetheless, court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). And a habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and second to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Indeed, appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Marshall has failed to show that appellate counsel's performance, including his decision to raise the claims he presented in his appellate brief and omit others, fell outside the wide range of professionally competent assistance. Appellate counsel filed a 74-page brief, raising four claims for relief, (ECF No. 15-17, PageID.2123–2209), which Marshall raises as the first four claims in his petition, (ECF No. 2, PageID.230–240). To the extent that Marshall alleges that appellate counsel should have raised claims involving the investigator's report and prosecutorial misconduct, Marshall fails to show that these claims have any merit, let alone more than the claims raised. And "appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting

38

*Greer*, 264 F.3d at 676). Marshall does not even identify the "dead-bang" winners that were left out. Conclusory allegations of ineffective assistance of appellate counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Marshall is not entitled to relief on this claim.

## G. Actual Innocence

Marshall argues he is entitled to habeas relief based upon the state trial court judge's refusal to grant him post-conviction relief on his actual innocence or to at least conduct an evidentiary hearing on his claim that he had newly discovered evidence showing his innocence.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *Id.*; *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress*, 484 F.3d at 854–55 (collecting cases). Though Marshall alleges constitutional violations, as the Court has explained, none of these allegations

amount to constitutional errors. Therefore, Marshall is not entitled to relief based on actual innocence.

Marshall also does not have a claim based on the denial of an evidentiary hearing; as discussed previously, errors in the application of state law, including evidentiary issues, are not cognizable on federal habeas review. *See Seymour,* 224 F.3d at 552.

## H. Judge Shopping

Lastly, Marshall contends that the prosecutor committed misconduct by judge shopping, that is, by making sure that Marshall's case would be assigned to a state district court judge at the preliminary examination and to a circuit court judge at trial who would each be favorable to the prosecution. (ECF No. 2, PageID.252.)

A defendant, though, does not have a right to have a criminal case heard by a particular judge. *See Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984) (internal citations omitted); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("No substantive or procedural right entitles a defendant to one judge instead of another."). Although Marshall claims that the judges assigned to his case were actually biased against him, Marshall fails to give any examples of bias to support his claim. Marshall's conclusory allegations of judicial bias are insufficient to establish his claim. *See Wright v. Lazaroff*, 643 F. Supp. 2d 971, 1000 (S. D. Ohio 2009). Accordingly, Marshall is not entitled to habeas relief on this claim.

**V. Conclusion**

For the foregoing reasons, the Court DENIES Marshall's Petition for Writ of Habeas Corpus. A separate judgment as well as an order on the applicability of a certificate of appeal will follow.

SO ORDERED.

Dated: November 7, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE